CAINE *v.* CLEVELAND, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY CO.

CARRIERS—RELATION OF PASSENGER AND CARRIER — LIABILITY FOR LOST BAGGAGE.

> Where plaintiff, in the evening, purchased a ticket over defendant's road and checked her trunk to a nearby city, intending to take said road to the city in the morning and then take a through train back over the same road to her home in a distant city, but in the morning went to the city another way, destroyed her ticket, surrendered her baggage check for the purpose of re-checking the trunk to her destination, and proceeded to her home according to her original intention, defendant may not avoid liability for the value of the trunk, which was stolen at the checking point the same night it was checked, on the theory that the relation of passenger and carrier did not exist because plaintiff did not travel to the city over defendant's road in the morning, since at the time it was stolen it was in defendant's possession for the purpose of transportation and plaintiff held both a check for it and a passenger ticket entitling her to transportation for both herself and her checked baggage.

Error to Berrien; White (Charles E.), J.   Submitted

On liability of carrier for baggage not accompanied by a passenger, see notes in 55 L. R. A. 650; 43 L. R. A. (N. S.) 806; L. R. A. 1915E, 281.

October 27, 1921.    (Docket No. 39.)    Decided December 22, 1921.

Assumpsit in justice's court by Dolly Caine against the Cleveland, Cincinnati, Chicago & St. Louis Railway Company to recover the value of lost baggage. There was judgment for plaintiff, and defendant appealed to the circuit court.    Judgment for defendant on a directed verdict.    Plaintiff brings error.    Reversed.

*G. M. Valentine*, for appellant.

*Gore & Harvey*, for appellee.

STEERE, C. J.    Plaintiff resides near Benton Harbor, Michigan.    In the summer of 1920 she made a journey with her little daughter to visit a sister residing in a small town named Addyston, in the State of Ohio, which is a way station on plaintiff's line 13 miles from Cincinnati.    She took with her a trunk containing the wardrobes of herself and daughter, with other articles of ordinary baggage.    Defendant's through trains did not stop at Addyston.    Having completed her visit and desiring to take a through train on defendant's line for return to Benton Harbor, plaintiff went to Cincinnati for that purpose.    On September 3, 1920, the day before she started on her journey home, she sent her trunk containing the baggage of herself and daughter to defendant's station at Addyston shortly after 5 o'clock in the afternoon, by a drayman named Deakman who bought a ticket good for four rides between Addyston and Cincinnati and had her trunk checked to the latter place, telling the Addyston station agent who checked her trunk that the lady for whom he was transacting the business would catch the early train for Benton Harbor and wanted her trunk sent to Cincinnati on the first train

in the morning.   He accepted and checked the trunk for Cincinnati, put it in the station baggage room and closed up the station for the night at about 5:45 p. m.   The drayman afterwards delivered to her the ticket and baggage check.   The ticket was torn up by the little girl after they were on the train.   The through morning train over defendant's line which plaintiff intended to and did take for Benton Harbor left Cincinnati at 9 a. m., passing through Addyston without stopping.   Its first local train in the morning for Cincinnati left Addyston at 6:30.

It was some distance from the home of defendant's sister to defendant's station in Addyston, while an interurban line passed in front of the house on which she could take a car later than defendant's local train and reach Cincinnati in plenty of time to catch her train for Benton Harbor.   She remained at her sister's that night, took the interurban to Cincinnati in the morning, there bought her ticket at defendant's station for Benton Harbor, surrendered her local baggage check for the trunk from Addyston to Cincinnati and re-checked it to Benton Harbor, receiving a baggage check for its carriage there, and went home over defendant's line.   She never saw her trunk again. It did not arrive at Benton Harbor with her as anticipated and later she received notice by telegram from defendant that her trunk had been stolen from the Addyston station and directing her to file a claim for her loss, which she did.

It appears that on the night of September 3, 1920, after plaintiff's trunk had been received by defendant's agent and checked for Cincinnati, thieves broke into defendant's baggage room at Addyston and stole her trunk with its contents.   After she received defendant's telegram and forwarded her claim some correspondence followed until, on November 8th, defendant, through its general baggage agent, wrote her

denying any liability of the company for the loss of her trunk on the ground that it occurred through no negligence of defendant, its liability only being that of a warehouseman, and stating they had found the trunk about 400 yards from the station in a corn-field broken open and rifled of its contents and he inclosed to her a duplicate baggage check for the empty broken trunk to Benton Harbor, with which she could get it from the baggage agent at that station. She declined to do so, insisting on compensation for her loss, and on November 22, 1920, defendant's general baggage agent wrote her, saying:

"Beg to state my communication gave you all the facts and as to the position of this company in the matter."

Plaintiff then brought this action in justice's court where the case was tried, resulting in a judgment in her favor, and defendant appealed to the circuit court where the court, on conclusion of proofs, directed a verdict for defendant on the ground that plaintiff did not become a passenger on its line from Addyston to Cincinnati after her trunk was checked and therefore its liability, if any, for her baggage in its possession checked between those two stations was only that of a warehouseman.

The authority for that view in this State, which the court evidently concluded and counsel for defendant contend is controlling in the instant case, is *Marshall* v. *Railroad Co.*, 126 Mich. 45 (55 L. R. A. 650). We do not find that the reasoning and application of authorities referred to in support of that decision are generally accepted as applicable or complacently followed as contended for the defense (55 L. R. A. 650, 43 L. R. A. [N. S.] 806) ; nor do we construe the decision in that case upon the issue directly before the court as conclusive in all cases under any circumstances of the proposition that the carrier does not

incur the liability of an insurer of checked baggage unless the passenger accompanies it in its transportation or is prevented from doing so through fault of the carrier.  Whatever may have been said in that case incidentally harking back to the early common-law rule adopted and strictly applied in stage coach and early railway days, where and when checking of passenger baggage was unknown and each traveler must look after his personal baggage at his peril, the actual question there presented for determination, as stated and decided by the court, was:

"May a passenger purchase a ticket, check his baggage, sell his ticket, and then stand in the position of a *bona fide* passenger upon the road?"

And the writer of the opinion said:

"Counsel cite no authority the parallel of this  *  *  *  My own examination of the authorities fails to find a parallel case."

While analogous in some respects, the instant case does not parallel the *Marshall Case* in various material facts.  In that case the court was considering a state of facts where baggage arrived at the destination to which it had been checked Saturday forenoon at 10 o'clock, was held on the platform some time for the owner to claim it, then placed in defendant's baggage room at the terminal point from where it was stolen during the night after a claimed reasonable time and opportunity for the owner, who was not and did not intend to be a passenger on defendant's line, to have taken it away.  In the instant case it was checked in the evening for an early morning train by a prospective passenger on defendant's line and stolen from its baggage room at the initial point during the night, before arrival of the morning train upon which it was to be forwarded, and upon which plaintiff might have been a passenger.  When stolen the trunk

was yet in the carrier's possession for the purpose of transportation and plaintiff held both a check for it and a passenger ticket, entitling her to transportation for both herself and her checked baggage to the designated terminal point.    In the *Marshall Case* no one was at the terminal point to claim the baggage during the day or night after it arrived.    When it was first claimed is not shown.    Some time after it was stolen Marshall made a journey there in his own conveyance, but he was not a passenger over defendant's road until more than four months had elapsed.    Here plaintiff was at Cincinnati shortly after her trunk should have arrived and presented to defendant her claim for it evidenced by its check and defendant gave her in exchange a baggage check for transportation of the trunk to Benton Harbor before departure of its through morning train for there, for which she had purchased a ticket and went home upon, in substance just what defendant's agent at Addyston was advised would be done at the time he accepted the trunk on the previous evening and checked it to Cincinnati for that purpose.    In the *Marshall Case* the court found plaintiff intended to and did go to the destination of his baggage by his private conveyance, and for his own convenience purchased a ticket "for the sole purpose of deceiving the railroad company into the belief that he intended to be a passenger entitled to have carried with him the usual amount of baggage." In this case there is no proof of any deception or purpose to deceive the railroad company, or that plaintiff did not intend to be a passenger over the 13 miles of its line to Cincinnati the next morning, beyond the bare fact that after time for the 6:30 morning train to leave Addyston she went over there on the electric line.    There is no evidence of when she first learned it was possible for her to start later than 6:30 on the electric line and catch her train at Cin-

·cinnati; when she decided to do so is mere conjecture. Her whole purpose from the beginning was to travel to her home over defendant's line as directly and conveniently as its method of running and stopping its trains permitted.    The transaction at Addyston with defendant's agent was but an initiatory step to taking its through train for that journey which in its run carried her directly back through Addyston.

Defendant's only grievance appears to be that she did not ride twice that morning between those two points, instead of once with her transportation twice paid.    She did not sell or use her local ticket over that 13 miles, which was good for either direction, but gave it to her daughter while on the train to play with and mark up, later seeing that it was destroyed. This record taken in its entirety shows no trickery, dishonesty or intent to deceive by word or conduct as the court found in the *Marshall Case,* but that as a part of her journey home over defendant's line which necessitated going the wrong direction for a short distance to connect with a through train which did not stop at her point of departure, plaintiff purchased a ticket good either way over that short distance giving her two rights of transportation, one to be carried as a passenger and one to have carried for her the usual amount of personal baggage.    Defendant's burden under such contract of carriage was in no sense increased or affected by her not availing herself of her purchased right to be carried by defendant to catch its through train.

In view of the circumstances and conditions attending the entire transaction in which all plaintiff's dealings with defendant were directed to the one purpose of traveling over its line, of which its agent at Addyston was advised when he received and checked her trunk, there is reason in the contention that after purchase of her ticket and checking her baggage at

Addyston in preparation for her journey nome over defendant's line her relations with it were in effect those of passenger and carrier.    Under such a state of facts as shown here the reasons for the old strict rule that a passenger must accompany his baggage and seasonably care for it at the terminal point have little if any application.

But accepting the *Marshall Case* as stating the general rule applicable to present conditions of travel, upon which the authorities are not in harmony, exceptions can be and are recognized where the reasons of the rule are palpably inapplicable, and on the record now before us this case can fairly be classed amongst the exceptions.

The judgment is reversed, with costs to plaintiff, and a new trial granted.

MOORE, WIEST, FELLOWS, STONE, BIRD, and SHARPE, JJ., concurred with STEERE, C. J.

CLARK, J.    Because of the *Marshall Case*, it was the duty of the trial judge to direct a verdict for defendant, as requested, and his so doing may not be said to be error on the theory that the instant case is distinguishable.    It is not.

In the *Marshall Case* the plaintiff bought from the carrier at Detroit a ticket from Detroit to Imlay City on which he checked his trunk, without at any time becoming or intending to become a passenger for the trip.    The liability of the railroad was held to have been at no time greater than that of a gratuitous bailee. In the case at bar, plaintiff bought a ticket from Addyston to Cincinnati without becoming or intending to become a passenger for the trip.    She desired to send her trunk by defendant's road and to go to Cincinnati by interurban.    She testified:

"I did not take the railway train out in the morning because the station was about a mile and a half from

where I was at my sister's house.   There was a street car running in front of her place.   *   *   *

"Q. As a matter of fact you did not purchase a ticket from Addyston to Cincinnati at all?

"A. Oh, yes, sure, to take my trunk; I could not have checked my trunk if I had not had a ticket."

If the *Marshall Case* is to be followed, defendant was liable only as a gratuitous bailee.   But the holding in that case is against the weight of authority.

With the understanding that the holding on this point in the *Marshall Case,* by the opinion of Mr. Chief Justice STEERE, is squarely overruled, I concur.

STONE and SHARPE, JJ., concurred with CLARK, J.